IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DWAYNE GARY, | : | |
| *Plaintiff*, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| C/O BAUDER et al., | : | No. 16-2861 |
| *Defendants*. | : | |

**MEMORANDUM**

PRATTER, J.                                                                                                                                   FEBRUARY 17, 2017

     Dwayne Gary, a former inmate at Montgomery County Correctional Facility, claims that several corrections officers attacked him without cause and then retaliated against him when he complained about the attack, as well as that Montgomery County's policies and customs caused the attack to occur. Defendants have filed partial motions to dismiss, targeting specific claims in Mr. Gary's Complaint. Mr. Gary agreed to withdraw a few claims and opposes Defendants' arguments as to others. The Court will grant in part and deny in part the motions.

**BACKGROUND**

     Mr. Gary alleges that in 2014, while serving a DUI and probation revocation sentence at Montgomery County Correctional Facility, he was brutally attacked and "choked into unconsciousness" by Correctional Officers Bauder, Zamosky, and Zerr, while Lt. Collins acted as a lookout and failed to intervene. After he made a verbal complaint, the officers allegedly filed false misconduct charges against Mr. Gary, put him in the "hole," and plotted to fabricate evidence against him.

     A month later, Officers Bauder, Fuentes, and Smith came to Mr. Gary's housing unit and harassed him because, according to Mr. Gary, he had filed a grievance relating to the beating.

Lt. Miller stood by and observed the harassment without intervening. The next day, Mr. Gary found mouse droppings in his food.

Mr. Gary alleges that Montgomery County and Warden Algarin failed to investigate his grievance and instead protected the correctional officers' unlawful attack on him. He alleges that Montgomery County, Warden Algarin, and other unnamed policy makers maintained a custom, policy, and practice of allowing Caucasian correctional officers to "violently beat innocent African-American men inmates" and not disciplining the perpetrators.

In Count I of his Complaint, Mr. Gary brings a § 1983 excessive force claim against Defendants Bauder, Zamosky, Zerr, and Collins. Counts II and III are a state law battery claim and a state law assault claim, respectively, against the same Defendants. In Count IV, Mr. Gary alleges that Montgomery County and Warden Algarin failed to train or supervise correctional officers and that this failure resulted in his injuries. In Count V, he claims that Montgomery County failed to train or supervise Warden Algarin and other policy-makers. In Count VI, Mr. Gary claims that Montgomery County and Warden Algarin maintained policies and customs that allowed the correctional officer defendants to believe that they could violate Mr. Gary's rights with impunity. Count VII sets forth a retaliation claim against Defendants Bauder, Zamosky, Zerr, Collins, Fuentes, Miller, and Smith, in which Mr. Gary claims that these defendants fabricated disciplinary charges, put him in the "hole," and put mouse droppings in his food because he exercised his First Amendment right to file a grievance and verbally complain about the excessive force used against him. The next claim, also labeled Count VII, states a conspiracy claim, through which Mr. Gary attempts to tie all of the Defendants to a general conspiracy to violate his rights. Count VIII sets forth a claim for intentional infliction of emotional distress against all of the Defendants.

There are two pending motions to dismiss. The first was filed by Montgomery County, Lt. Collins, Officer Zerr, Cpl. Fuentes, and Warden Algarin, and the second, which merely duplicates many of the same arguments advanced by the Defendants who filed the first motion, was filed by Defendant Officers Bauder, Zamosky, Miller, and Smith. Mr. Gary opposes both motions.

**LEGAL STANDARD**

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint. Although Rule 8 of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (citations and quotations omitted) (alteration in original), the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citation omitted).

To survive a motion to dismiss, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level. . . ." *Twombly,* 550 U.S. at 555 (citations omitted). The question is not whether the claimant will ultimately prevail but whether the complaint is "sufficient to cross the federal court's threshold." *Skinner v. Switzer,* 562 U.S. 521, 530 (2011) (citation omitted). An assessment of the sufficiency of a complaint is thus "a context-dependent exercise" because "[s]ome claims require more factual explication than others to state a plausible claim for relief." *W. Penn Allegheny Health Sys., Inc. v. UPMC,* 627 F.3d 85, 98 (3d Cir. 2010) (citations omitted).

In evaluating the sufficiency of a complaint, the Court adheres to certain well-recognized parameters.  For one, the Court "must only consider those facts alleged in the complaint and accept all of the allegations as true." *ALA, Inc. v. CCAIR, Inc.,* 29 F.3d 855, 859 (3d Cir. 1994) (citing *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984)); *see also Twombly,* 550 U.S. at 555 (stating that courts must assume that "all the allegations in the complaint are true (even if doubtful in fact)"); *Mayer v. Belichick,* 605 F.3d 223, 230 (3d Cir. 2010) ("[A] court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents.").  The Court also must accept as true all reasonable inferences that may be drawn from the allegations, and view those facts and inferences in the light most favorable to the nonmoving party.  *See Rocks v. City of Phila.,* 868 F.2d 644, 645 (3d Cir. 1989); *see also Revell v. Port Auth. of N.Y. & N.J.,* 598 F.3d 128, 134 (3d Cir. 2010).  Nonetheless, the Court need not accept as true "unsupported conclusions and unwarranted inferences," *Doug Grant, Inc. v. Greate Bay Casino Corp.,* 232 F.3d 173, 183–84 (3d Cir. 2000) (citations and quotations omitted), or the plaintiff's "bald assertions" or "legal conclusions," *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997) (citations and quotations omitted).

**DISCUSSION**

### A. Official Capacity Claims

Defendants argue that to the extent Mr. Gary attempts to sue the individual Defendants in both their official and individual capacities, the official capacity claims are duplicative of the claims brought against Montgomery County and should therefore be dismissed.  Naming a government official in his official capacity is essentially the same as naming the government entity itself.  *See, e.g., Allen v. Montgomery Cty.*, Civil Action No. 09-1458, 2009 WL 4042761,

at *5 (E.D. Pa. Nov. 19, 2009) (dismissing official capacity claims that were identical to claims against government entity); *Burton v. City of Philadelphia*, 121 F. Supp. 2d 810, 812-13 (E.D. Pa. 2000) (holding that "because claims against individual defendants in their official capacities are equivalent to claims against the governmental entity itself, they are redundant and may be dismissed" and collecting cases holding the same).

Mr. Gary does not oppose this argument, and indeed agrees that these official capacity claims should be dismissed. Therefore, the Court will dismiss all claims against individual Defendants in their official capacity.

### B. *Monell* Claims

Mr. Gary frames his *Monell* claims against Warden Algarin and Montgomery County as claims for failure to train/supervise correctional officers and for maintaining policies and customs that caused the deprivation of Mr. Gary's rights. He also alleges an additional *Monell* claim against Montgomery County for failure to train/supervise Warden Algarin and other unnamed supervisory officials. Defendants argue that Mr. Gary has not sufficiently alleged any *Monell* or supervisory liability claims against Montgomery County or Warden Algarin.

A plaintiff cannot succeed on a § 1983 claim against a municipality merely on the basis of *respondeat superior*. Rather, a plaintiff must show that the municipality itself was responsible for the alleged constitutional violation. *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990). A plaintiff can demonstrate municipal responsibility by establishing that "the alleged constitutional transgression implements or executes a policy, regulation or decision officially adopted by the governing body or informally adopted by custom." *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996). In order to state a plausible *Monell* claim, a plaintiff must "specify

what exactly that custom or policy was." *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009).

Aside from affirmative policies that are likely to result in constitutional violations and direct acts of policymakers that violate federal constitutional law, the Third Circuit Court of Appeals has held that a municipality also may be liable when a "policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need." *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003) (internal quotations omitted). A subset of this type of claim involves a failure to train employees under circumstances in which "(1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Wood v. Williams*, 568 Fed. App'x. 100, 105 (3d Cir. 2014) (citing *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999)).

While Defendants are correct that the allegations set forth in the actual *Monell* counts are far from detailed, Defendants then seemingly ignore the rest of Mr. Gary's Complaint by arguing that he has presented nothing more than conclusory allegations. In paragraph 40 of his Complaint, Mr. Gary alleges that various individual Defendants have a history of "violently beat[ing] innocent African-American men inmates," and that the County and its supervisors, including Warden Algarin, have "turned a blind eye" despite lawsuits resulting in "hundreds of thousands of dollars of settlements." *See* Compl. at ¶ 40. This allegation, coupled with the facts alleged regarding Mr. Gary's own treatment by the individual Defendants, is enough at this very

preliminary stage to at least state a *Monell* claim. If Mr. Gary's allegations are true – that Defendant Officers Bauder, Zamosky, and Zerr and Lt. Collins have a history of using excessive force in their dealings with African American inmates without adverse consequences and that the County and Warden Algarin were on notice of this repeated conduct through lawsuits – it follows that the violations of Mr. Gary's rights could have resulted from the Municipal Defendants' deliberate indifference. *See Stewart v. Kinch*, Civil Action No. 12-1509, 2012 WL 6645547, at * 4-5 (E.D. Pa. Dec. 21, 2012) (declining to dismiss *Monell* claim when plaintiff alleged that municipal defendants failed to discipline or train officers who had a history of committing constitutional violations). Therefore, the Court will not dismiss these *Monell* claims.

### C. First Amendment Retaliation Claim

In his First Amendment retaliation claim, Mr. Gary alleges that after making a verbal complaint about the officers using excessive force, he was put in disciplinary segregation and that false charges of inmate misconduct were filed against him. He then alleges that he filed a four-page grievance, and that Defendants then retaliated by harassing him and tampering with his food. Defendants argue that Mr. Gary's First Amendment retaliation claim fails because Mr. Gary did not have a right to a grievance procedure, mere verbal harassment is not a constitutional violation, and inmates do not have a right to not be falsely accused of institutional misconduct or placed in administrative segregation.

A prisoner alleging retaliation must show (1) constitutionally protected conduct, (2) an adverse action by prison officials sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the exercise of his constitutional rights and the adverse action taken against him. *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (citing *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir.2001). If these three

elements are proven, the burden shifts and "the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." *Id.* at 334.

Defendants' first attack on Mr. Gary's retaliation claim goes to prong one, in that they argue that inmates do not have a constitutional right to a grievance procedure, and that therefore Mr. Gary did not engage in constitutionally protected conduct. However, the cases they cite for that proposition are not retaliation cases, but rather cases in which inmates complain that prison officials did not process their grievances. *See, e.g., Burnside v. Moser*, 138 Fed. App'x. 414 (3d Cir. 2005). Despite Defendants' arguments to the contrary, the Third Circuit Court of Appeals has held that filing a grievance against correctional officers does "implicate[] conduct protected by the First Amendment." *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016) (citing *Mitchell*, 318 F.3d at 530). Indeed, even making verbal complaints about officer conduct may be considered protected conduct. *See Hart v. Whalen*, Civil Action No. 3:CV-08-0828, 2008 WL 4107651, at *8 (M.D. Pa. July 29, 2008) ("verbal complaints [to a supervisor about an officer's misconduct] may constitute constitutionally protected conduct"). Here, Mr. Gary alleges that he verbally complained and filed a grievance about the misconduct of correctional officers. Thus, Mr. Gary has sufficiently alleged that he engaged in conduct that was protected by the First Amendment.

Defendants' other arguments – that verbal harassment, the filing of false misconduct charges, and placement in administrative segregation are not adverse actions sufficient to support a retaliation claim – go to prong two, whether the alleged retaliatory conduct was sufficiently adverse so as to deter a person of ordinary firmness from exercising his constitutional rights. For purposes of this element, "[a]n adverse consequence 'need not be great in order to be

actionable[;]' rather, it need only be 'more than de minimis.'" *Watson*, 834 F.3d at 423 (citing *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006)). "[T]he key question in determining whether a cognizable First Amendment claim has been stated is whether 'the alleged retaliatory conduct was sufficient to deter a person of ordinary firmness from exercising his First Amendment rights.'" *Id*. at 170 (citing *Suppan v. Dadonna*, 203 F.3d 228, 235 (3d Cir. 2000). Though the conduct complained of must be more than *de minimis* to be actionable, "[t]he cumulative impact of retaliatory acts may become actionable even though the actions would be de minimis if considered in isolation." *Brennan v. Norton*, 350 F.3d 399, 422 n.17 (3d Cir. 2003).

To determine whether the adverse action can support a retaliation claim, the standard is not whether the alleged adverse action is on its own unconstitutional, but rather "government actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." *Allah v. Seiverling*, 229 F.3d 220, 224-25 (3d Cir. 2000) (citing *Thaddeus–X v. Blatter*, 175 F.3d 378, 386 (6th Cir.1999) (en banc)). Contrary to Defendants arguments, courts have held that fabricated misconduct charges and placement in disciplinary segregation may be adverse actions sufficient to make out a retaliation claim. *See, e.g., Williams v. Varano*, Civil No. 3:CV-12-529, 2013 WL 877206, at *7 (M.D. Pa. Mar. 8, 2013) (false misconduct charges could support retaliation claim); *Allah*, 229 F.3d at 225 (administrative segregation could support retaliation claim). However, courts have repeatedly held that verbal threats and harassment are not "sufficiently adverse to support a retaliation claim." *Id.*; *Payne v. Duncan*, Civil No. 3:13-cv-2203, 2014 WL 1653136, at *3 (M.D. Pa. Apr. 24, 2014). Therefore, while Mr. Gary's other allegations may be considered adverse actions for the purposes of making out a retaliation claim, Mr. Gary's allegations of verbal harassment are not, on their own, sufficient to

support such a claim.  The Court will grant Defendants' motions only to the extent that Mr. Gary attempts to state a claim for retaliation based on verbal harassment; in all other respects, the motion is denied as to the retaliation claim.

### D. Conspiracy

Mr. Gary includes a conspiracy claim against all Defendants, in which he alleges that all of the Defendants conspired to violate his constitutional rights and invokes 42 U.S.C. §§ 1983, 1985, 1986, and 1988.  To plead a conspiracy claim under any of these statutes,[1] a plaintiff must "specifically present facts tending to show agreement and concerted action to deprive [him] of his ... rights." *Walsh v. Quinn,* 327 Fed. App'x. 353, 355 (3d Cir. 2009); *see also Panayotides v. Rabenold,* 35 F.Supp.2d 411, 419 (E.D.Pa.1999) ("A plaintiff must make specific factual allegations of combination, agreement, or understanding . . . to carry out the alleged chain of events. . . . [O]nly allegations of conspiracy which are particularized . . . will be deemed sufficient[.]") (citations and quotations omitted).  Defendants contend that Mr. Gary fails to sufficiently allege particularized facts to support an agreement.

Mr. Gary counters that his allegations are sufficient, and recites several paragraphs from his Complaint in support.  However, aside from a conclusory allegation of an "express[]" or "tacit[]" agreement between all Defendants to violate his rights, the Complaint is devoid of any specific "facts tending to show agreement and concerted action" with respect to the excessive force claim.  *See Rosembert v. Borough of East Lansdowne*, 14 F. Supp. 3d 631, 648 (E.D. Pa. 2014) (dismissing civil rights conspiracy claims as lacking in sufficient allegations of an agreement when the complaint contained only "boilerplate" assertions about a history of not

---

[1] To plead a § 1986 claim, the plaintiff must allege that a defendant had knowledge of a § 1985 conspiracy and failed to prevent it.  *See Clark v. Claybaugh*, 20 F.3d 1290, 1295 (3d Cir. 1994). Therefore, while a defendant charged with violating § 1986 need not necessarily have agreed to join a conspiracy, there still must have been a conspiracy in existence, or else there would be nothing for the § 1986 defendant to prevent.

punishing officers who used excessive force and knowledge that officers would act in concert with fellow officers to cover up uses of excessive force); *Robinson v. Prison Health Servs., Inc.*, Civil Action No. 10-7165, 2014 WL 2452132, at * (E.D. Pa. June 2, 2014) ("Merely asserting that all defendants expressly or tacitly agreed to act and did expressly or tacitly act under the color of state law, knowingly, intentionally, willfully, maliciously, wantonly, grossly negligent [sic] and with deliberate indifference, in concert and conspiracy with each other and others to violate plaintiff's constitutional, civil and other rights is insufficient to satisfy the pleading requirements.") (internal quotation omitted).

Mr. Gary fares only slightly better as to the retaliation claim, as he does at least allege that Defendant Officers Bauder, Zamosky, and Zerr, and Lt. Collins agreed to file false misconduct charges against him and put him in the hole, as well as that he overheard several unspecified Defendants "plotting to fabricate evidence against him." *See* Compl. ¶¶ 31, 32. However, he has not sufficiently pleaded a conspiracy as to any other aspect of the retaliation claim or as to any Defendants other than those named in paragraph 31, and he has not pleaded that these particular actions were motivated by discriminatory animus, as required by 42 U.S.C. § 1985(3). *See Farber v. City of Paterson*, 440 F.3d 131, 135 (3d Cir. 2006) ("[A] plaintiff [alleging a claim under § 1985(3)] must allege both that the conspiracy was motivated by discriminatory animus against an identifiable class and that the discrimination against the identifiable class was invidious.") Thus, the Court will dismiss Mr. Gary's conspiracy claim, except that a claim for a § 1983 conspiracy to file false misconduct charges as retaliation for Mr. Gary's verbal complaints will survive as to Defendant Officers Bauder, Zamosky, and Zerr, and Lt. Collins only. However, the dismissal will be without prejudice.

### E. Intentional Infliction of Emotional Distress

Defendants argue that Montgomery County is immune from suit under the Political Subdivision Tort Claims Act with respect to the intentional infliction of emotional distress claim. Indeed, many courts have held as much. *See, e.g., Viney v. Jenkintown School Dist.*, 51 F. Supp. 3d 553, 557 (E.D. Pa. 2014) (dismissing intentional infliction of emotional distress claim against local agency because exceptions to immunity cited by plaintiff only apply to individual employees); *Wiggs v. City of Philadelphia*, Civil Action No. 13-5193, 2014 WL 772538, at *6 (E.D. Pa. Feb. 27, 2014) (holding that the Tort Claims Act does not "create an exception to the general rule of immunity for the willful tortious conduct of an agency's employee") (internal citation and quotation omitted). Mr. Gary's correct contention that the Political Subdivision Tort Claims Act does not shield Montgomery County from his federal claims is of no moment, given that a claim for intentional infliction of emotional distress is a state law claim. Thus, the Court will dismiss the intentional infliction of emotional distress claim as to Montgomery County.

### F. Injunctive Relief

Finally, Defendants argue that any injunctive relief requested is moot because Mr. Gary is no longer in custody. Mr. Gary concedes this point, and the Court will therefore dismiss any claims for injunctive relief.

**CONCLUSION**

For the foregoing reasons, the Court will grant in part and deny in part Defendants' motions. An appropriate Order follows.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge